In the Matter of the Liquidation of LAWYERS TITLE AND GUARANTY COMPANY.

In the Matter of the Liquidation of NEW YORK TITLE AND MORTGAGE COMPANY.

Supreme Court, Additional Special Term, New York County, February 23, 1938.

*D. William Leider*, for the Superintendent of Insurance of the State of New York, as liquidator of the Lawyers Title and Guaranty Company, and as liquidator of the New York Title and Mortgage Company.

*Wagner, Quillinan & Rifkind* [*Alexander Pfeiffer* and *Simon H. Rifkind* of counsel], for the Creditors' Committee of the New York Title and Mortgage Company.

*Barber, Fackenthal & Giddings*, counsel for Committee of Stockholders of New York Title and Mortgage Company.

*Mitchell, Taylor, Capron & Marsh* [*Edwin W. Cooney* and *Edward L. Hunt, Jr.*, of counsel], for the City Bank Farmers Trust Company, a creditor of the Lawyers Title and Guaranty Company.

*Leon Leighton*, for certain creditors.

*Kramer & Kleinfeld* [*Barnett Kaprow* of counsel], for the Trustees of Series B-K.

*Jacob Holtzmann*, attorney and special counsel for the Mortgage Commission of the State of New York.

FRANKENTHALER, J. This is an application by the Superintendent of Insurance, as liquidator of both Lawyers Title and Guaranty Company and New York Title and Mortgage Company, for an order approving a proposed merger of Lawyers Title Corporation, hereinafter referred to as the " Lawyers Corporation " and New York Title Insurance Company, hereinafter referred to as the " New York Company." In August, 1933, the Superintendent was authorized to take over Lawyers Title and Guaranty Company and New York Title and Mortgage Company for the purpose of attempting their rehabilitation. In order to preserve the valuable title insurance business and title plants of these companies and their good will, the orders of rehabilitation empowered the Superintendent to form the Lawyers Corporation and the New York Company for the purpose of conducting the title insurance and mortgage loan business formerly done by the companies in rehabilitation. The capital, surplus and reserves of the new companies were supplied out of the assets of the old ones, and all the shares of the capital stock of the new companies have been held, in lieu of the transferred assets, by the Superintendent as rehabilitator of the old companies and are now held by him as

their liquidator. Since its creation the Lawyers Corporation has not made any mortgage loans but has confined its operations almost exclusively to searching, examining and insuring real estate titles. The New York Company, although it for a time engaged in the servicing and mortgage loan business, has for about a year and a half restricted its operations to title searches, examinations and insurance. It is these companies which the Superintendent now seeks to merge.

Proceedings for the merger of the two subsidiaries were initiated more than two years ago. In December, 1935, the Superintendent applied for judicial approval of a merger upon the terms contained in a merger agreement dated December 9, 1935. In February, 1936, the petition was withdrawn and an amended merger agreement, dated February 4, 1936, submitted for approval. Shortly thereafter, the Superintendent requested the court to approve the sale of the title plants and good will of both subsidiaries and of of another company to the Ætna Casualty and Surety Company, but the offer of purchase made by the Ætna Company was subsequently withdrawn. Efforts to merge the companies were then revived. A new agreement of merger was presented for approval in April, 1937. While the proceeding was pending, the Superintendent received an offer from Globe and Rutgers Fire Insurance Company for the purchase of shares of stock of the Lawyers Corporation. Application was made for the court's approval of this offer but the court adopted the recommendation of the referee, appointed to take testimony, that the offer be disapproved. Since that time the Superintendent has devoted himself to the formulation of a merger agreement which would be fair and equitable to both companies. Many conferences have been had with representatives of creditors of the parent companies, Lawyers Title and Guaranty Company and New York Title and Mortgage Company, and also with representatives of stockholders of the former, and an amended agreement of merger has been drafted which the Superintendent believes is fair and equitable to both companies. It is this amended agreement of merger which the court is now asked to approve.

The main provisions of the amended merger agreement may be briefly summarized. The New York Company is to be merged into the Lawyers Corporation. The name of the continuing corporation is to be selected at the time of the consummation of the merger. It is to have an aggregate capital and surplus of $4,000,000. Its capital stock is to consist of 6,000 shares of preferred stock of the par value of $100 each and 160,000 shares of common stock of the par value of $10 each. The Lawyers Corporation is to contribute no investment assets, but only its title

plants, furniture and fixtures and good will. In return for these the Superintendent of Insurance, as liquidator of Lawyers Title and Guaranty Company, is to receive 4,500 shares of the preferred stock and warrants for the purchase of 18,000 shares of common stock at $25 per share, that being the book value of each share at the time of the consummation of the merger. The New York Company's contribution to the continuing corporation is to consist of its title plants, furniture and fixtures and good will, and in addition, of investment assets aggregating $3,400,000. The Superintendent, as liquidator of New York Title and Mortgage Company, is to receive in exchange 1,500 shares of preferred stock, 136,000 shares of common stock, and warrants for the purchase of 6,000 shares of common stock at $25 per share. Each of the companies will also contribute sums sufficient to cover their reserves, accounts payable, agency moneys in their possession, etc. The preferred stock is to carry a fixed minimum cumulative dividend of three dollars per share per annum and is to be entitled, in addition, to three-twentieths of the annual net income available for dividends, after deducting the sum required for the fixed cumulative dividends, but in no event to more than a maximum aggregate annual dividend of four dollars and fifty cents per share. Two-thirds of the net income of the continuing corporation over and above the fixed and participating dividend requirements, is to be set aside for and applied to the redemption of the preferred stock. The preferred stock is to be callable at $100 per share plus accrued and unpaid dividends. The warrants for the purchase of common stock are to remain in force until all the preferred stock shall have been called and redeemed.

In support of his application for approval of the merger the Superintendent of Insurance stresses the urgent necessity which exists for eliminating the continuing " drain which the operating deficits of the new companies constitute upon the estates in liquidation." Each of the subsidiaries has been steadily losing money since its creation in August, 1933. Drastic economies have been to a large extent offset by the serious decline in operating income which has taken place during the last half year. The two companies have been and are competing with each other for the comparatively small amount of title insurance business which is presently available. The prospect for the successful continuation of the business of the Lawyers Corporation as a separate entity is particularly bad, for the largest part of its capital assets consists of a mortgage in the face amount of $1,200,000 which is concededly not worth anything like that amount. The Superintendent of Insurance maintains that he does not possess sufficient sound assets to

replace the mortgage and he contends that if there were no merger he would, therefore, be faced with the necessity of reducing the capital stock of the Lawyers Corporation to such an amount that it would be exceedingly difficult to compete with other title companies, including the New York Company. Efforts to dispose of the title plants and good will of the Lawyers Corporation at a fair and adequate price have so far proved unavailing. Obviously something must be done to put an end to the substantial losses which both the Lawyers Corporation and the New York Company have suffered ever since their creation. The only solution, under the circumstances, appears to be the merger of the two companies. The merger idea is not a new one nor was it a new one when the first merger proceeding was commenced in December, 1935. Even before the parent companies were taken over for rehabilitation in August, 1933, and the subsidiaries created, there had been under consideration the subject of a merger of the parent companies, it being felt that there were too many title insurance companies in the metropolitan area for the volume of business available. No agreement between the parties in interest had, however, been reached at the time of the orders of rehabilitation. The merger of the Lawyers Corporation and the New York Company will result in the elimination of such unnecessary duplication in personnel and services as now exists. Instead of two companies competing at a loss for an amount of business inadequate in volume to enable them both to prosper, there will be a single company with a reasonably good likelihood of success. The difficulties confronting the Lawyers Corporation in respect of the unsatisfactory capital asset of $1,200,000, previously referred to, will be eliminated while the adequate capital possessed by the New York Company will be augmented by the excellent title plants of the Lawyers Company and the latter's good will and business. The testimony indicates that according to most conservative estimates the operating income of the merged company should at least equal its operating expense until general conditions improve.

The terms of the proposed merger agreement are, in the court's opinion, fair and equitable to those interested in the Lawyers Title and Guaranty Company as well as to those interested in the New York Title and Mortgage Company. Counsel for the Mortgage Commission has submitted a memorandum stating: " The Commission believes that this proposed agreement of merger is fair to both groups of creditors of the old companies and joins in the petition of the Superintendent of Insurance that same be approved by the Court."

Except for certain changes suggested by a few creditors' representatives, which the court believes would affect the fairness of the plan to all concerned, no opposition to the proposed merger or to its terms has been voiced by any one representing creditors of either of the parent companies in liquidation. In addition, counsel for the stockholders' committee of New York Title and Mortgage Company has filed a memorandum stating that " this Committee * * * does not object to the merger of these two companies " and that " the Committee does not wish to dissent " from the opinion, entertained by those who negotiated the agreement on behalf of New York Title and Mortgage Company, that the terms of the merger agreement are not disadvantageous to that company. The only opposition to the motion emanates from a group of stockholders of Lawyers Title and Guaranty Company whose bid for the purchase of stock for the Lawyers Corporation has heretofore been rejected by the court.

In this connection it is well to mention the fact that in a report recently filed in which judicial approval is recommended of a plan for the reorganization of New York Title and Mortgage Company, the referee makes the following comment upon the prospect of a merger of the New York Title Insurance Company and Lawyers Title Corporation: " There is a possibility that the title insurance business may be successfully merged, upon fair and reasonable terms, with the title insurance business of Lawyers Title Corporation or perhaps with some other institution. Indeed proceedings looking to such an end have been and are now pending before Mr. Justice FRANKENTHALER. If such an arrangement could be achieved, it may prove highly beneficial to all concerned for it would result not merely in a larger and better equipped title insurance company, but it would also enable economies in operation to be effected which should materially reduce the operating costs."

The application for approval of the amended agreement of merger is granted. Settle order.